**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JAMES BRUNO, individually and on behalf on behalf of themselves and all others similarly situated,<br>       Plaintiff,<br><br>vs.<br><br>AMERICAN TEXTILE COMPANY, INCORPORATED<br><br>       Defendant. | Case No.: 1:22-cv-02937<br><br><br><br>The Honorable Andrea R. Wood |

**DEFENDANT AMERICAN TEXTILE COMPANY, INCORPORATED'S REPLY IN
SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

  Defendant American Textile Company, Incorporated ("Defendant" or "ATC") submits this Reply in Support of Its Motion to Dismiss the Complaint of plaintiff James Bruno, individually and on behalf of all others similarly situated ("Plaintiff"), in its entirety. (*See* Dkt. No. 1) ("Complaint" or "CP").

**INTRODUCTION**

  Plaintiff concedes that, to survive a motion to dismiss, his claims to relief must be "plausible on [their] face" and that such facial plausibility must be based on the "factual content" of his allegations. (Dkt. No. 14, p. 2). Despite his protestations to the contrary, all of Plaintiff's claims ultimately rest on whether the ASTM method is the benchmark by which thread counts must be measured. Yet, the Complaint fails to allege that the bedding industry recognizes the ASTM method as the standard, that it has adopted that method, or that any specific manufacturers actually use that method when labeling bedsheets. (*See* CP ¶¶7-8 (merely referring to *"*common

1

*or* standard practice." (emphasis added)).[1] In addition, neither the Complaint nor Plaintiff's Opposition alleges that the ASTM method is required by any law, regulation, or statute. (Dkt. No. 14, p. 9). Indeed, Plaintiff does not allege that the bedding industry actually utilizes any specific standard. Absent any allegation of a recognized standard, or any law, statute, or regulation requiring the bedding industry to use one method versus another for thread counting, Plaintiff cannot establish that ATC has made any misrepresentation on the Product labeling based on the 1250 thread count. For this reason and others, the Complaint should be dismissed in its entirety.

## RESPONSE TO PLAINTIFF'S OPPOSITION

I. **PLAINTIFF'S THREADBARE ALLEGATIONS DO NOT RISE TO THE LEVEL RECOGNIZED BY THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS ACT.**

   a. *The FTC Has Not Adopted Or Endorsed the ASTM Method.*

The core of Plaintiff's Complaint is based on the misleading suggestion that the Federal Trade Commission ("FTC") has somehow endorsed the ASTM method for thread counting for the bedding or textile industry.[2] Although Plaintiff insists that the FTC has concurred with industry bodies that "counting plies in plied yarns individually inflates the thread count several times," (Dkt. No. 14, p. 3, CP ¶15), the correspondence relied upon by Plaintiff does not support

---

[1] Thus, Plaintiff does not merely fail to allege facts showing why it is the standard, he fails to include in the Complaint even conclusory allegations that it actually is the "standard," as opposed to something that is "common."

[2] This misleading suggestion is reiterated in Plaintiff's Opposition. (Dkt. No. 14, p. 6).

such an interpretation.³ A full review of the correspondence referenced (but not attached) to the Complaint is therefore necessary to rebut this misleading premise.

The earliest letter relied upon by Plaintiff was from the American Textile Manufacturers Institute ("ATMI") to the FTC, dated January 31, 2002. (CP ¶¶20-21). In that letter, ATMI requested a staff advisory opinion from the Federal Trade Commission because "[*w*]*e believe that* manufacturers, importers and retailers of bed sheets *should rely on the ASTM D3775-96* standard test method to determine count." (Dkt. No. 7-2, p. 3) (emphasis added). The FTC responded to ATMI's letter, dated March 18, 2002, writing that the "question is not appropriate for issuance of a staff advisory opinion." (Dkt. No. 7-3, p. 2). Accordingly, the FTC *declined* to issue a staff advisory opinion "about whether counting yarns within a ply as individual yarns would be deceptive[.]" (*Id.*). This letter cannot reasonably be interpreted to mean that the FTC has adopted or otherwise endorsed the ASTM method, or that the FTC has agreed with ATMI's position.

Plaintiff also cites an August 2, 2005 letter from the FTC in response to a similar letter purportedly sent by the National Textile Association ("NTA")⁴. (Dkt. No. 7-1, CP ¶¶15-16). According to this FTC letter, the NTA similarly sought a Commission staff opinion from the FTC "regarding the appropriate way to disclose fabric 'thread count'" and whether it "could violate Section 5 of the FTC Act." (Dkt. No. 7-1, p. 1). The FTC first responded to a hypothetical based upon information provided by the NTA. (*Id.* at p. 2). But then it stated

---

³ In effect, Plaintiff insists that this Court adopt a standard for thread counting that the FTC has long declined to adopt and that this Court punish ATC, on an *ex post facto* basis, for non-compliance with that standard.

⁴ Significantly, the Complaint is also devoid of any factual allegations concerning the authority of ATMI or NTA to regulate or govern the bedding or textile industry. Nor does Plaintiff include allegations concerning the purpose of those organizations or their significance.

3

unequivocally that "[i]n accordance with Section 1.3(c) of the Commission's Rules of Practice and Procedure, 16 C.F.R. Section 1.3 (c), *this is a staff opinion only and has not been reviewed or approved by the Commission or by any individual Commissioner,* and is given without prejudice to the right of the Commission later to rescind the advice and, where appropriate, to commence an enforcement action." (Dkt. No. 7-1, p. 3) (emphasis added). In other words, the August 2, 2005 FTC letter quoted and relied upon by Plaintiff in the Complaint and Opposition plainly does not establish that the FTC has taken any position with respect to the ASTM method. At best, the two FTC letters merely establish that these two groups sought guidance from the FTC on the applicability of the ASTM method, but the FTC declined to act in any material way. *See Adam v. AQ Textiles LLC,* No. 1:20CV520, 2021 WL 3475677, at *2 (M.D.N.C. Aug. 6, 2021), *appeal dismissed,* No. 21-2033, 2022 WL 833630 (4th Cir. Feb. 9, 2022) (interpreting the same correspondence between NTA, ATMI, and the FTC).

Over twenty years after the FTC first corresponded with ATMI, the Complaint does not and cannot allege that the FTC has endorsed the adoption of the ASTM method. Nor does the Complaint allege that the FTC has taken any enforcement action concerning thread count based upon the supposed propriety of using the ASTM method. Thus, rather than being the "industry standard," ASTM is simply a standard Plaintiff now believes the industry should adopt.

Plaintiff's reliance on court orders from out-of-jurisdiction cases does not establish that the ASTM method is the benchmark, particularly where the Complaint *fails to make such allegations.* (Dkt. No. 14, p. 6, *citing Morrison v. Ross Stores, Inc.*, No. 18-cv-2671, 2021 WL 3852726, at *11 (N.D. Cal. Aug. 27, 2021) (order on class settlement); *Hawes v. Macy's Inc.,* No. 17-cv-0754, 2022 WL 194407, at *2 (S.D. Ohio Jan. 22, 2022) (order granting class

4

certification).⁵  At best, the ASTM method is *Plaintiff's* preferred method for calculating thread count.  But this preferred method does not and cannot provide the foundation for any of Plaintiff's claims that are grounded in misrepresentation.

> b. *Plaintiff's Complaint Fails to Allege Deceptive Conduct.*

Barring any such requirement or industry standard, Plaintiff cannot plausibly allege that a reasonable consumer, acting reasonably under the circumstances, would be deceived by thread counts on the Product label as required by the Illinois Consumer Fraud and Deceptive Business Act ("ICFA").  *E.g. Bell v. Publix Super Mkts, Inc.,* 982 F. 3d 468, 474-475 (7th Cir. 2020).  Deceptive conduct requires a probability that a significant portion of the general consuming public could be misled.  Plaintiff's claim is based on a non-existent rule that is not alleged to have been required or adopted by the FTC or the bedding industry.  The Complaint also fails to allege whether there are any differences between packaging that adopts the ASTM method, versus others that do not adhere to the ASTM method, and how a reasonable consumer could be misled based on these purported differences.

Plaintiff attempts to sidestep these deficiencies in the Complaint by claiming other out-of-jurisdiction courts "concluded that 'reasonable consumer[s] could be misled by [such] thread count misrepresentations,'" but that is simply not accurate.  (Dkt. No. 14, p. 3).  For example, in *Solo v. Bed Bath & Beyond, Inc.*, No. 06-cv-01908, 2007 WL 1237825 (D.N.J. Apr. 26, 2007), the plaintiffs filed suit under the New Jersey Consumer Fraud Act alleging that plaintiffs had been misled by thread counts for bedding.  The plaintiffs in *Solo* broadly claimed to have "suffered an ascertainable loss in that they purchased linens that were of a lower quality and less

---

⁵ Plaintiff relies heavily on multiple decisions by a single judge in the *Hawes* case. (Dkt. No. 14, pp. 3, 6). However, in that case, the propriety of the ASTM method was accepted by the parties and thus was not in dispute. (Dkt. No. 14, p. 6).

valuable than linens they were promised." *Id.* at \*4. But the district court actually dismissed the entire amended complaint, *with prejudice*, because the plaintiffs in that case failed to demonstrate that they suffered any ascertainable loss as required by the New Jersey Consumer Fraud Act ("CFA"). *Id.* at \*5.

Similarly, in *Cattie v. Wal-Mart Stores, Inc.,* 504 F. Supp. 2d 939, 946 (S.D. Cal. 2007), the district court dismissed the plaintiff's second amended complaint for, among other things, lack of standing. Plaintiff misquotes *Cattie* by claiming that the district court found that a reasonable consumer could be misled by the thread counts. Not so. The court actually stated that having thread counts lower than advertised "can constitute an injury under the [California Consumers Legal Remedies Act] *provided other requirements are met.*" *Id.* at 946. (emphasis added). The district court found that the plaintiff failed to establish reliance on the alleged misrepresentation, especially where the plaintiff, like Plaintiff in this case, filed a nationwide suit less than two weeks after purchasing the alleged product.[6] *Id.* at 946-947.

Although some courts may have found that a plaintiff plausibly alleged fraud and/or misrepresentation based on thread counts, those decisions were based on different complaints and related to different consumer protection statutes from different states. They have little bearing on this motion. *See Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 740 (7th Cir. 2014) (rejecting argument that successful pleading in another similar case translates into the current one, noting that "[w]hile Camasta successfully alleged a deceptive sales practice in that case, he failed to do so here."). Moreover, Plaintiff here has not otherwise shown that the ICFA

---

[6] Plaintiff alleges he purchased the Product "between May 1, 2022 and May 31, 2022." (CP ¶1). This Complaint was filed on June 6, 2022. Despite his allegations to the contrary, given that Plaintiff sued shortly after purchasing the Product, it is impossible for Plaintiff to have been misled based on "durability" or "longevity" (CP ¶29) that was inconsistent with his expectations.

shares similarities with the statutes at issue in those other cases. *See Hawes v. Macy's Inc.,* 346 F. Supp. 3d 1086, 1094 (S.D. Ohio 2018)[7] (claims under California Unfair Competition Law, California Fair Advertising Law, and California Consumer Legal Remedies Act); *Rushing v. Williams-Sonoma, Inc.*, 2016 WL 4269787, *7 (N.D. Cal. Aug. 15, 2016)(same); *Hill v. AQ Textiles LLC,* No. 19-cv-0983, 2022 WL 252466 *8 (M.D.N.C. Jan. 27, 2022)(North Carolina Unfair and Deceptive Act).

In short, the Complaint falls far short of establishing that a reasonable consumer, acting reasonably under the circumstances, could be misled by thread counts not based on Plaintiff's preferred ASTM method, a method not required by the bedding industry, or by any law, statute, or regulation.

       c. *Plaintiff Cannot Establish Unfair Conduct.*

Plaintiff's threadbare Complaint also does not meet the threshold necessary to plausibly support a claim for unfair conduct under the ICFA. First, as highlighted above, Plaintiff still has not identified any law, statute, or administrative directive whose violation would rise to the level of offending public policy. Plaintiff does not dispute that the ASTM method is voluntary, and the Complaint does not allege that the bedding industry has adopted or otherwise endorsed the standard. While Plaintiff claims that statutory or rule violations are "merely one way an unfair practice can occur," Plaintiff does not actually identify another way to establish this prong in this case. (Dkt. No. 14, p. 7, *citing Saika v. Ocwen Loan Servicing, LLC,* 357 F. Supp. 3d 704, 716 (N.D. Ill. 2018)). Instead, Plaintiff wrongly asserts that whether a practice is unfair is a fact

---

[7] Importantly, the court similarly dismissed the plaintiff's Magnuson Moss Warranty Act and breach of warranty claims for failure to provide any pre-suit notice. *Id.* at 1092-1094.

question. (Dkt. No. 14, p. 7). But Plaintiff cannot rely on his conclusory allegations, without more, to plausibly establish that the alleged conduct offends public policy.

Second, Plaintiff's Complaint does not meet the threshold for establishing a claim for immoral, unethical, or oppressive conduct. Plaintiff's Opposition parrots generic language from existing case law, but makes no actual argument that the allegations in the Complaint meet the immoral or unethical standard. (Dkt. No. 14, pp. 7-8). Plaintiff does not rebut the indisputable fact that consumers have a myriad of options when perusing the linen aisle at Walmart or other retailers, including wide variations in price, color, size, pattern, brand, quality and thread count. The myriad of options available to any consumer automatically distinguishes this case from *Windy City Metal Fabricators v. CIT Tech. Fins. Servs., Inc.*, 536 F.3d 663, 672 (7th Cir. 2008), upon which Plaintiff relies. *Windy City* involved allegations of illegal binding equipment rental agreements that the defendant attempted to enforce. No such oppressive claims are alleged here because the consumer is free to purchase, or not purchase, the Product.

Finally, Plaintiff cannot establish that he has "adequately plead[ed] causation" of substantial injury based on the conclusory allegation that he "would not have paid as much." (Dkt. No. 14, p. 8). As Plaintiff's own case law shows, the fact that Plaintiff failed to allege that the product "[he] received [was] worth less than the [price] [he] paid for [it] or that [he] could have obtained a better price elsewhere" is "fatal to [his] effort to show pecuniary loss." *Benson v. Fannie May Confections Brands, Inc.,* 944 F.3d 639, 648 (7th Cir. 2019) (affirming dismissal under the ICFA because the plaintiff "failed to raise a plausible theory of actual damage."). Plaintiff has not alleged any facts, as opposed to conclusory allegations, that he could have purchased the Product at a lower price.

8

To the extent Plaintiff claims that "the Product is sold at a premium price" based on the alleged misrepresentation, this claim is contradicted by the Complaint itself. (CP ¶35). The Complaint alleges that the Product is sold for "no less than $54.99." Yet, the Complaint also claims that "a single-ply 300-count [bedsheet] costs $55 a set." (CP ¶5). In other words, the Product is sold at the same price as a single-ply 300 count bedsheet, so there is no basis from which to conclude that Plaintiff has suffered any substantial injury based on pricing alone.

Accordingly, Plaintiff has not established any unfair conduct under the ICFA.

## II. PLAINTIFF FAILED TO SATISFY THE JURISDICTIONAL PREREQUISITE TO MAINTAIN THE WARRANTY CLAIMS.

### a. Plaintiff Failed to Provide The Pre-Suit Notice Required for His Warranty Claims.

Plaintiff concedes that he failed to provide any pre-suit notice before filing suit. (Dkt. No. 14, pp. 8-9). The failure to provide any pre-suit notice is dispositive of Plaintiff's express and implied warranty claims, in addition to his claim under the Magnuson Moss Warranty Act. *E.g. Ibarrola v. Kind*, 83 F. Supp. 3d 751, 760 (N.D. Ill. 2015). And Plaintiff cannot satisfy the pre-suit notice obligation simply by filing suit shortly after the alleged purchase. *Chiappetta v. Kellogg Sales Co.*, No. 21-CV-3545, 2022 WL 602505, at *6–7 (N.D. Ill. Mar. 1, 2022)(citation omitted) ("The notice requirement is intended to encourage pre-suit settlement negotiations. That purpose would be eviscerated if a party could satisfy the notice requirement by filing suit.").

Plaintiff relies on *In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.,* 155 F. Supp. 2d 1069 (S.D. Ind. 2001) in an attempt to overcome his lack of pre-suit notice, but *Bridgestone* is inapposite. First, *Bridgestone* was decided under Michigan and Tennessee law, which have no application here. *Id.* at 1110. Second, the court in *Bridgestone* actually acknowledged that,

9

under Illinois law, a plaintiff cannot provide notice of breach by filing a lawsuit unless the consumer suffered a personal injury. *Id.* at 1110 (citing *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482 (1996)). In *Connick,* which Plaintiff cited in his Opposition, the Illinois Supreme Court actually affirmed the dismissal of the plaintiff's complaint based upon the plaintiff's failure to provide any pre-suit notice of breach. *Id.* at 494-495. In any event, Plaintiff makes no attempt to argue (nor can he) that he qualifies for Illinois' personal injury exception to the pre-suit notice rule. (Dkt. No. 7, p. 11, n.3).

      b. *Plaintiff Did Not Establish Application of the "Direct Dealing Exception" Based On His Threadbare Complaint.*

Plaintiff effectively concedes that he is not in privity with ATC. (Dkt. No. 14, p. 9). Instead, Plaintiff invokes the "direct dealing" exception to privity in an attempt to avoid dismissal of his warranty claims, but the only case Plaintiff cites to support his position is readily distinguishable. *See In re Rust-Oleum Restore Mktg., Sales Pracs. & Prod. Liab. Litig.*, 155 F. Supp. 3d 772, 806 (N.D. Ill 2016). There, the court reaffirmed that, in Illinois, "a plaintiff seeking to recover economic loss cannot maintain a claim for breach of implied warranty under the U.C.C. unless he or she is in privity of contract with the defendant." (*citing, inter alia, Zaro v. Maserati N. Am., Inc.,* 2007 WL 4335431, at *2 (N.D.Ill.2007)). While the *Rust-Oleum* court found that the direct-dealing exception applied, that finding was based on a "series of well-pleaded paragraphs detailing Rust-Oleum's direct marketing campaign to consumers, including to Plaintiffs and the putative class." *Id.* at 807. In contrast, Plaintiff relies solely on paragraphs 1 and 2 of the Complaint in an attempt to invoke the "direct dealing" exception. (Dkt. No. 14, p. 9). But the bare allegations in paragraphs 1 and 2 do not establish that ATC directly marketed to Plaintiff, particularly where Plaintiff claims that he purchased the Product "at locations,

10

including Walmart, Walmart.com, between May 1, 2022 and May 31, 2022, *among other times.*" (CP ¶52) (emphasis added).

Accordingly, Plaintiff has not pleaded a sufficient basis for privity, which is necessary to maintain either of his warranty-based claims.

### III. THE ECONOMIC LOSS RULE BARS PLAINTIFF'S NEGLIGENT MISREPRESENTATION CLAIM.

Plaintiff has not provided any viable argument to overcome the bar of the economic loss rule. In fact, Plaintiff does not dispute that the economic loss rule forecloses his claim for negligent misrepresentation. Instead, he attempts to evade the effect of the economic loss rule by claiming that a "special relationship" exists between ATC and Plaintiff based on ATC's "special knowledge and experience" in the bedding industry. (Dkt. No. 14, p. 10).

This argument has no merit. Illinois has not, and does not, recognize a special relationship absent the equivalent of a fiduciary relationship. *See Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 571–72 (7th Cir. 2012) ("Accordingly, state and federal courts in Illinois have rarely found a special relationship to exist in the absence of a more formal fiduciary one."). And Plaintiff does not cite any case law that suggests that a special relationship exists between a manufacturer and a consumer of its product.

The only case Plaintiff cites is *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.,* 159 Ill.2d 137 (1994), but *Congregation* is consistent with Illinois law and *Wigod*. In *Congregation of the Passion,* the Illinois Supreme Court found that a special relationship exists between an accountant and his client because the relationship is grounded in trust akin to an attorney-client relationship. (*Id.*). Plaintiff does not plausibly allege, nor can he reasonably argue, that ATC shares a similar fiduciary relationship with Plaintiff sufficient to establish a "special relationship."

11

For these reasons, Plaintiff's negligent misrepresentation claim should be dismissed.

### IV. PLAINTIFF'S FRAUD CLAIM FAILS TO ALLEGE SUFFICIENT FACTS WITH PARTICULARITY.

The threadbare allegations in the Complaint do not meet the heightened pleading standard required to establish common law fraud. Plaintiff's Opposition does nothing to reinforce the fraud claim aside from reciting the conclusory "who, what, when, where, and how" elements, which are insufficient to state a claim. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740 (7th Cir. 2014)(*citing Iqbal,* 556 U.S. at 678) ("'[N]aked assertions devoid of further factual enhancement' are insufficient to support a claim.").

Despite Plaintiff's claim, he does not sufficiently establish the "what," "where," "when," or "how" with any particularity. The "what" and the "how" are intertwined with Plaintiff's claims that the thread counts are "inflated" based on the "traditional, industry standard method." (Dkt. No. 14, pp. 10-11). The Complaint, however, is devoid of any factual assertions identifying what is the "traditional" or the "industry standard," or how such standard is determined. Plaintiff's fraud claim is based on the misleading premise that textile manufacturers must adhere to the ASTM method, when in fact, the Complaint does not allege that is the case. Given the absence of such a requirement, Plaintiff cannot reasonably plead, nor can he establish, let alone with sufficient particularity, that ATC made any misrepresentations of fact or engaged in fraud. *Connick,* 174 Ill. 2d at 496-497. At best, the Complaint alleges that there are at least two different standards governing thread counts, that the ASTM method advocated by Plaintiff has not been adopted by the bedding industry or the FTC, and that Plaintiff uses a method not preferred by Plaintiff. None of these allegations give rise to a fraud claim.

To meet the "where" and "when" elements to establish fraud, the Complaint alleges that Plaintiff purchased the Product "at locations" including "Walmart, Walmart.com," among other

times, but does not specify which Walmarts, what platforms, or on what dates. (CP ¶52). Nor, despite alleging multiple purchases, does the Complaint identify with particularity which purchase ultimately led to this suit.[8] Plaintiff's failure to establish the "when" and "where" with particularity is significant because, among other things, Plaintiff must establish reliance on the alleged misrepresentation to sufficiently establish common law fraud. *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007).

Importantly, the Complaint also fails to allege sufficient facts to establish the necessary scienter to support a fraud claim. Although Plaintiff argues that scienter can be alleged "generally," the facts alleged must still be sufficient to "raise a strong inference of knowing or reckless interpretation." *Davis v. SPSS, Inc*., 385 F. Supp. 2d 697, 715 (N.D. Ill. 2005). The existence of at least two different methods to count threads, without any allegation that one is required over another, is insufficient to establish a "knowing or reckless interpretation" of the standards governing thread counts.

Finally, despite conclusionary allegations that he paid more than he should have (CP ¶¶32-34), Plaintiff never actually alleges what he paid for the Product on any of the multiple occasions when he supposedly bought it. He merely alleges that "the Product is sold at a premium price, approximately no less than no less than [sic] $54.99 for the king or queen size sheet set . . ." (CP

---

[8] In fact, the allegations concerning purchases are inherently implausible. Supposedly, Plaintiff purchases the Product on multiple occasions, is dissatisfied when he uses it, and yet, goes back and buys it again. (CP ¶¶ 52-53). Indeed, apparently being either secretly pleased with his purchases or a glutton for punishment, he intends to seek out and buy the same Product *in the future*! (CP ¶61). On top of all this, consistent with his failure to meet his pre-suit notice obligations, Plaintiff never alleges that he complained to the seller about his experience with the Product or attempted to return the Product for a refund. What all this suggests is that Plaintiff was not a bona fide consumer attempting to buy bed sheets, but, rather, an opportunist shopping around for a lawsuit.

¶35.) He then alleges that "Plaintiff bought the Product at or exceeding the above-referenced price." (CP ¶56.)[9]

Consequently, Plaintiff fails to meet the particularity standard under Rule 9(b).

### V. UNJUST ENRICHMENT IS NOT A STANDALONE CLAIM UNDER ILLINOIS LAW.

Plaintiff acknowledges that the unjust enrichment claim should be dismissed to the extent this Court dismisses his other claims. To the extent this Court dismisses Plaintiff's fraud-based claims, it should also dismiss Plaintiff's unjust enrichment claim. In any event, unjust enrichment is not a separate cause of action under Illinois law. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 447 (7th Cir. 2011).

### VI. PLAINTIFF CONCEDES HE HAS NO STANDING FOR INJUNCTIVE RELIEF.

Finally, Plaintiff lacks standing to seek injunctive relief because he affirmatively alleges that he is now aware of the objected-to conduct. Plaintiff is therefore "not likely to be harmed by the practices in the future." *Camasta,* 761 F.3d at 741. Plaintiff does not provide a credible rebuttal. Rather, Plaintiff asserts that he is unable to rely on the labeling and representations of this Product, and other "similar high thread count bedding products" to claim that he will be harmed in the future. (Dkt. No. 14, p. 11, CP ¶62). First, this claim is contradictory. The Complaint alleges that Plaintiff "chose between Defendant's Product and products represented similarly, *but which did not misrepresent their attributes, requirements, instructions, features, and/or components."* (CP ¶59) (emphasis added). Therefore, by Plaintiff's own allegations, he is able to distinguish between other "similar high thread count bedding products" such that he will not be harmed in the future.

---

[9] Note that all of this information concerning his purchases should be within Plaintiff's control.

Second, Plaintiff cannot rely on other "similar high thread count bedding products" to bolster his standing claim (*Id.*). Just as Plaintiff cannot piggy-back on the injuries of unnamed class members to establish standing, he also cannot ground his standing on unspecified products that are not "fairly traceable to the challenged conduct *of the defendant*." *See Larkin v. Fin. Sys. of Green Bay, Inc.,* 982 F.3d 1060, 1064 (7th Cir. 2020) (internal quotation marks omitted) (Emphasis added); s*ee also Payton v. County of Kane,* 308 F. 3d 673, 682 (7th Cir. 2002).

Third, although Plaintiff relies on *Le v. Kohls Dep't Stores, Inc.,* 160 F. Supp. 3d 1096 (E.D. Wis. 2016) to suggest that the Complaint alleges facts beyond a "bare assertion," that is simply not the case. *Le* alleged that the department store Kohls was engaged in a "company-wide, pervasive, and continuous" false advertising scheme, which made it difficult for the plaintiff to determine the scope of the deceptive pricing practices. *Id.* at 1110. In contrast here, the Complaint alleges that he "will purchase the Product again when he can do so with the assurance that Product's labels are consistent with the Product's components[.]" (CP ¶61). Accordingly, Plaintiff is aware of any issues with the Product, and has conceded he will not purchase it again for the foreseeable future.

Thus, there is no likelihood of future harm and Plaintiff is not entitled to injunctive relief.

## **CONCLUSION**

For the reasons set forth above and in ATC's Memorandum of Law in Support of Its Motion to Dismiss Plaintiff's Complaint, ATC respectfully requests that this Court grant its Motion to Dismiss and provide ATC any further relief this Court deems appropriate.

                Respectfully submitted,

Dated: September 21, 2022            DENTONS US LLP

By:  /s/ Leah R. Bruno
Leah R. Bruno (#6269469)
233 S. Wacker Drive, Suite 5900
Chicago, IL 60606
Tel: (312) 876-8000
leah.bruno@dentons.com

Philip A. O'Connell, Jr. (#6185933)
Tony K. Lu (#678791)
One Beacon Street, Suite 25300
Boston, MA 02108
Tel: 617-235-6802
philip.oconnelljr@dentons.com
tony.lu@dentons.com

*Attorneys for Defendant*
*American Textile Company, Incorporated*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 21, 2022, a true copy of the foregoing Defendant American Textile Company, Incorporated's Reply In Support of Its Motion to Dismiss Plaintiff's Complaint was served upon counsel of record via the Court's electronic case filing system.

   /s/ Leah R. Bruno
*One of the attorneys for Defendant*
*American Textile Company, Incorporated*