# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JAMES BRUNO, on behalf of himself and all others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiff, | |
| v. | |
| AMERICAN TEXTILE COMPANY, INCORPORATED, | |
| Defendant. | |

Case No. 22-cv-2937

Hon. LaShonda A. Hunt

## MEMORANDUM OPINION AND ORDER

Plaintiff James Bruno filed this putative class action against Defendant American Textile Company, Inc., the manufacturer and seller of Sealy brand sheet sets labeled as having a 1250 thread count, alleging that product description is false and misleading. Defendant has moved to dismiss the complaint under Federal Rule Civil Procedure 12(b)(6). For the reasons that follow, the motion [8] is granted in part and denied in part.

## BACKGROUND

Plaintiff, an Illinois resident, bought a set of Defendant's Sealy brand sheets from Walmart's website in May 2022. (Dkt. 1 at ¶¶ 1, 45, 52). Although the sheets were advertised as having a thread count of 1250, Plaintiff alleges the actual thread count is only 223. (*Id*. at ¶¶ 1, 24-25). Plaintiff claims the common practice in the bedding industry is to count the number of threads in both the warp (vertical direction) and filling (horizontal direction), with each yarn as one thread, regardless of whether it is single-ply or multi-ply. (*Id*. at ¶¶ 7-8). But Defendant allegedly counted each ply in the yarns that comprise its sheets as a separate thread, which inflated

1

the thread count "by several times over what it would be if industry standard methods were used." (*Id.* at ¶ 28). For example, a laboratory analysis of the sheets Plaintiff purchased showed 57 warp yarns, with 19 plies in each yarn; instead of counting that as 57 threads—as supposedly required by industry practice—Defendant multiplied 57 by 19 to deceptively inflate its thread count. (*Id.* at ¶¶ 26-27). Plaintiff alleges that this practice resulted in a product with lower quality, durability, and longevity, and allowed Defendant to charge a higher price than it would have had it advertised the lower, more accurate thread count. (*Id.* at ¶¶ 29, 35).

The Chairman of the National Textile Association wrote the Federal Trade Commission ("FTC") that decades-long common practice in the bedding industry has been to count each yarn individually (as opposed to counting each ply), and stated that deviation from that practice "create[s] confusion in the marketplace and has caused consumers to compare thread counts that may have been calculated in two dramatically different ways." (Dkt. 7-1). Likewise, the Executive Vice President for the American Textile Manufacturers Institute informed the FTC that "[l]abeling [sheets] based on a count that includes each ply in plied yarns deceives the customer into believing that bedding products with higher counts are better when, in fact, they might be inferior because of the method used to determine the count." (Dkt. 7-2). The FTC has not issued any opinion or guidance on the appropriate way to measure thread counts in bedding.

Plaintiff filed the instant suit on behalf of himself and a class consisting of Illinois consumers who purchased the relevant sheets during the limitations period, as well as a multi-state class for similar individuals in Montana, Kansas, Maine, Wyoming, Idaho, Kentucky, West Virginia, Kansas, Iowa, Mississippi, and Utah. (Dkt. 1 at ¶ 63). The complaint raises the following claims: (1) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"); (2) violation of the analogous consumer fraud statutes in the states listed above for the

multi-state class; (3) breach of express warranty, implied warranty, and the Magnuson Moss Warranty Act; (4) negligent misrepresentation; (5) common law fraud; and (6) unjust enrichment. Defendant contends that Plaintiff has failed to state a claim under any of those theories. (Dkt. 8). The motion is fully briefed.

## DISCUSSION

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *Skinner v. Switzer*, 562 U.S. 521, 529–30, 131 S. Ct. 1289, 179 L. Ed. 2d 233 (2011). When considering dismissal of a complaint, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the Plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam). To survive a motion to dismiss, a Plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint is facially plausible when the Plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

The Court concludes that Plaintiff has stated a plausible claim under the ICFA and analogous multi-state consumer fraud statutes, and for unjust enrichment. The remaining claims and Defendant's request for injunctive relief are dismissed.

I.   **ICFA and Multi-State Consumer Fraud Statutes**

"The ICFA 'is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices.'" *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010) (quoting *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403, 266 Ill. Dec. 879, 775 N.E.2d 951, 960 (2002)). "In

3

order to state a claim under the ICFA, a plaintiff must show: '(1) a deceptive or unfair act or promise by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) that the unfair or deceptive practice occurred during a course of conduct involving trade or commerce.'" *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014) (quoting *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012)). "[A] practice is deceptive 'if it creates a likelihood of deception or has the capacity to deceive.'" *Rudy v. Family Dollar Stores, Inc.*, 583 F. supp.3d 1149, 1158 (N.D. Ill. 2022) (quoting *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019)). The Seventh Circuit has explained that "deceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used" and "[w]hat matters most is how real consumers understand and react to the advertising." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 477-479 (7th Cir. 2020).

The Court finds that a reasonable consumer could be deceived by Defendant's representation that the sheets in question had a thread count of 1250. The practice of counting each ply within the individual yarns instead of each yarn creates a likelihood of confusion among consumers. Plaintiff alleges that consumers use thread counts "as an indicator of fabric quality, with higher thread counts able to provide greater comfort, durability, and longevity relative to lower thread counts," and "rely on the represented thread count as a gauge of product quality." (Dkt. 1 at ¶¶ 2-3). By advertising a thread count of 1250, a reasonable consumer may be fooled into believing they are purchasing a luxurious set of sheets, only to find that the quality of the sheets is much lower for a much higher price. (*See id.* at ¶ 5 (alleging that 300 thread count sheet sets cost $55 per set, whereas 600 thread count sheet sets cost $180 per set).)

Deceptive trade practice claims are generally not suitable for a motion to dismiss unless the challenged statement was not misleading as a matter of law. *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 756 (N.D. Ill. 2015). Here, the Court cannot say that is the case. Plaintiff claims that had Defendant used industry standard thread count measurements for sheets, the actual thread count—233—is five times lower than the advertised thread count—1250. If true, a reasonable consumer could be deceived by Defendant's representation about 1250 thread count sheets, particularly given the significant difference in the cost of sheets with a lower thread count. Accordingly, the ICFA claim will not be dismissed.[1]

Other courts have allowed similar deceptive trade practice claims to go forward in other jurisdictions. For example, in *Rushing v. Williams-Sonoma, Inc.*, NO. 16-cv-01421-WHO, 2016 WL 4269787, at *7 (N.D. Cal. Aug. 15, 2016), the court held that plaintiff's claim under the California Unfair Competition Law could survive a motion to dismiss because "reasonable consumers would be misled by defendants' failure to disclose an accurate thread count." Similarly, in *Hawes v. Macy's Inc.*, 346 F. Supp. 3d 1086, 1094 (S.D. Ohio 2018), the court held that plaintiff's claim that defendant had misleadingly labeled the thread count on a sheet set adequately pled a cause of action under, *inter alia*, the California Unfair Competition Law and the Missouri Merchandising Practices Act. The Court follows those cases in holding that Plaintiff has adequately pled a cause of action under the ICCA.[2]

---

[1] Because the Court finds that Plaintiff has adequately alleged a deceptive trade practice, it does not reach the issue of whether he has pled an unfair trade practice.

[2] The Court is aware that other courts have dismissed similar claims about bedding. However, that reasoning is not applicable to the facts here. For example, in *Adam v. AQ Textiles LLC*, No 1:20CV520, 2021 WL 3475677, at *2 (M.D.N.C. Aug. 6, 2021), the Court dismissed plaintiff's complaint for lack of Article III standing, an issue neither party has raised. But even if they had, the Court believes Plaintiff has adequately alleged that he spent more money on sheets (an injury in fact) that is traceable to Defendant's misleading statements and likely to be redressed by a favorable decision. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (establishing elements for Article III standing). Cases rejecting claims under New Jersey's unfair competition statute are not persuasive since that law requires plaintiffs to plead "an ascertainable loss" and a causal relationship to defendant's conduct and the ICFA does

Most of Defendant's argument regarding the ICFA claim centers around the American Society for Testing Materials ("ASTM") Standard 3775 cited in Plaintiff's complaint as "cover[ing] the standard test method for measuring" thread counts. (Dkt. 1 at ¶ 10). According to Defendant, the Court should dismiss Plaintiff's complaint because it "does not allege that the ASTM method is a regulation, statute, or law, and 'ASTM' appears nowhere in the Product label." (Dkt. 7 at 11.) This is a red herring, though, as nothing in the ICFA requires that the deceptive trade practice violate a regulation, statute, or law. Indeed, other courts in this district have found ICFA claims were adequately pled, even where the allegedly deceptive term was not defined by any regulation or law. *See, e.g.*, *Rudy*, 583 F. Supp. 3d at 1159-60 (discussing meaning of "smoked" in almond packaging). Moreover, the Court does not read Plaintiff's complaint as alleging that the ASTM method is the *only* way to accurately measure thread counts. Rather, it is an example of the standard one-thread-per-yarn measurements widely adopted by the textile industry and understood by consumers. The Court therefore rejects this argument.

Similarly, Defendant attempts to show that the FTC never adopted the standard being proposed by Plaintiff. Again, it is not required that the deceptive practices violate an FTC opinion or regulation. The Court agrees that Plaintiff misleadingly quotes the correspondence between industry groups and the FTC in his complaint and attempts to put words into the FTC's mouth where it is inappropriate to do so. Nonetheless, the advocacy of the American Textile Manufacturers Institute and the National Textile Association is adequate to demonstrate Plaintiff's more salient point, namely that there was an industry-wide understanding on how to measure thread counts in bedding and the method chosen by Defendant runs counter to that understanding

---

not. *See Zebersky v. Bed Bath & Beyond, Inc.*, No. CIVA 06-CV-1735 PGS, 2006 WL 3454994, at *3 (D.N.J. Nov. 29, 2006) (dismissing claim for failure to plead a causal nexus); *Solo v. Bed Bath & Beyond, Inc.*, Civil No. 06–1908 (SRC), 2007 WL 1237825, at *3 (D.N.J. Apr. 26, 2007) (dismissing claim for failure to plead ascertainable loss or causal nexus).

and deceives consumers. The Court does not find that Defendant has demonstrated dismissal is warranted merely because the FTC failed to adopt the proposals of industry interest groups.

The Court likewise denies the motion to dismiss the multi-state consumer fraud claims. Neither side argued about any of the individual statutes, and instead tied all their arguments to the ICFA—*i.e.*, if the ICFA claim was dismissed, the multi-state claims should be dismissed. Because no substantive argument has been presented to the Court for dismissal of those claims, the motion must be denied. To be clear, the Court reaches no decision on the propriety of the class or any of the elements required under Federal Rule of Civil Procedure 23. Differences in those state statutes may render a class action inappropriate, but the Court will not reach that issue until it is properly raised. At the pleading stage, though, the multi-state class claims can proceed.

## II. Breach of Warranty and Magnuson Moss Warranty Act

To prevail on a claim for breach of warranty under Illinois law, a plaintiff "must demonstrate 'by a preponderance of the evidence the terms of the warranty, [a breach or failure of the warranty], *a demand upon the defendant to perform under the terms of the warranty,* a failure of the defendant to do so, a compliance with the terms of the warranty by the plaintiff, and damages measured by the terms of the warranty.'" *Ibarrola*, 83 F. Supp. 3d at 759-60 (quoting *Hasek v. DaimlerChrysler Corp.*, 745 N.E.2d 627, 638, 319 Ill.App.3d 780, 253 Ill.Dec. 504 (2001)) (emphasis added). "The purpose of the notice requirement is to encourage parties to resolve the dispute short of litigation" and requires pre-litigation notice unless a party alleges "a physical injury or when the defendant had actual knowledge of the product's defect." *Id.* at 760; *see also Rudy*, at 583 F. Supp. 3d at 1162.

Plaintiff does not argue that he provided pre-litigation notice or that he fits within one of the exceptions. He states instead that it is sufficient to provide notice "within a reasonable time"

after the alleged breach was discovered. But that is plainly not the state of the law in Illinois, as reflected in the cases cited above, which have all made clear the requirement to provide pre-suit notice to bring a breach of warranty claim in Illinois. Thus, Plaintiff's claims for breach of warranty under Illinois law are dismissed.

Plaintiff's Magnuson Moss Warranty Act claim also fails. The relevant portion of the Magnuson Moss Warranty Act defines a "written warranty" as:

> any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time.

15 U.S.C. § 2301(6)(a).

To meet this definition, the phrase must be a product description that warrants to "consumers that the Product is defect-free or will perform at a specified level over a specific time." *Rudy*, 583 F. Supp. 3d at 1163-64 (citing *In re Sears, Roebuck & Co.*, No. MDL-1703, 2006 WL 1443737, at *4 (N.D. Ill. May 17, 2006)). The phrase "1250 thread count sheet set" does not warrant that the sheets are defect-free or will perform for a specified level over a specific time, and, therefore, does not fall within the Magnuson Moss Act's definition of a written warranty. Furthermore, "[t]he ability to sustain a cause of action under the Magnuson-Moss Act is dependent on the existence of an underlying viable state-law warranty claim." *Schiesser v. Ford Motor Co.*, No. 16-CV-00730, 2016 WL 6395457, at *4 (N.D. Ill. Oct. 28, 2016). As noted above, Plaintiff does not have a viable state law warranty claim, and his Magnuson Moss Act claim must also be dismissed for this reason.

## III.  Negligent Misrepresentation

Under Illinois law, the elements for a negligent misrepresentation claim are: "(1) a false statement of material fact; (2) carelessness or negligence in ascertaining truth of the statement; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statements; (5) damage to the other party resulting from such reliance; and (6) a duty on the party making the statement to communicate accurate information." *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 218 Ill.2d 326, 334–35, 300 Ill. Dec. 69, 843 N.E.2d 327 (2006). However, Illinois had adopted the economic loss doctrine, "which holds that remedies for economic losses should be obtained through contract claims, not tort claims." *Sneed v. Ferrero U.S.A., Inc.*, No. 22 CV 1183, 2023 WL 2019049, at *5 (N.D. Ill. Feb. 15, 2023) (citing *Brogan v. Mitchell Intern., Inc.*, 181 Ill.2d 178 183–84, 229 Ill. Dec. 503, 692 N.E.2d 276 (1998)). In this case, Plaintiff has alleged only economic damages (paying too much for substandard sheets) due to Defendant's actions. Courts in this district consistently deny negligent misrepresentation claims due to the economic loss doctrine in cases where a plaintiff alleges he was duped by deceptive trade practices. *See, e.g.*, *Sneed*, 2023 WL 2019049 at *5; *Kinman v Kroger Co.*, 604 F. Supp. 3d 720, 727-28 (N.D. Ill. 2022); *Rudy*, 583 F. Supp.3d at 1164-65.

The Court is not persuaded by Plaintiff's argument that Defendant had a duty to provide non-deceptive information because it was a "trusted brand in the area of bedding and sleep products." (Dkt. 14 at 16). This appears to be an attempt to fit this case into the exception to the economic loss doctrine for "one who is in the business of supplying information for the guidance of others in their business transactions." *Moorman Mfg. Co. v. National Tank Co.*, 91 Ill.2d 69, 88, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982). However, that exception is limited to defendants who provide "intangible services, such as accounting services," and does not "apply to information

9

provided by a purveyor of tangible products." *Kinman*, 604 F. Supp. 3d at 727-28. Sheet sets are a tangible product; as such, Defendant does not qualify for this exception to the economic loss doctrine. Plaintiff's claim for negligent misrepresentation is dismissed.

### IV.    <u>Fraud</u>

"Under Illinois law, the elements of common-law fraud are: '(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement.'" *Kinman*, 604 F. Supp. 3d at 731 (quoting *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482, 496, 221 Ill.Dec. 389, 675 N.E.2d 584 (Ill. 1996)). Fraud must be alleged with particularity according to Federal Rule of Civil Procedure 9(b), which means "describing the who, what, when, where, and how of the fraud." *Camasta*, 761 F.3d at 737.

Plaintiff's barebones fraud claim alleges simply that "Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations." (Dkt. 1 at ¶ 108). The Court has found at least five instances where Plaintiff's attorney has included this allegation verbatim in fraud claims brought before other courts in this district, and the claim has been rejected as conclusory every single time. *See infra* at § VII. The Court joins its colleagues in holding that this allegation fails to satisfy the heightened pleading requirement of Federal Rule of Civil Procedure 9(b) and dismisses Plaintiff's common law fraud claim.

### V.    <u>Unjust Enrichment</u>

Defendant argues the unjust enrichment claim should be dismissed because it "is based on the same conduct underlying [Plaintiff's] other claims" and "[b]ecause his other claims all fail . . . Plaintiff's unjust enrichment claim likewise fails." (Dkt. 7 at 19). The Court rejects this argument

10

for two reasons. First, as noted above, Plaintiff has adequately alleged a claim under the ICFA, and therefore his other claims do not all fail. Second, Defendant's argument that the unjust enrichment claim should be dismissed because it is based on the same conduct as Plaintiff's other claims is not a valid reason to grant Defendant's motion. When presented with an argument that the plaintiff's unjust enrichment claim was "duplicative of other claims," the court in *Rudy* denied the motion to dismiss and allowed the unjust enrichment claim to proceed, noting that "[u]nder federal pleading standards, a plaintiff may plead claims in the alternative, even if the claims are contradictory." 583 F. Supp. 3d at 1166 (quoting *Prudential Ins. Co. of Am. v. Clark Consulting, Inc.*, 548 F. Supp. 2d 619, 623 (N.D. Ill. 2008)); *see also* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency"). The Court agrees with the reasoning in *Rudy*. Although Plaintiff's unjust enrichment claim may be in tension with his IFCA claim, at this early stage of the litigation, the Court need not dismiss the claim on that basis. Defendant's motion is denied as to Plaintiff's unjust enrichment claim.

## VI. <u>Injunctive Relief</u>

Plaintiff does not have standing to seek injunctive relief. "A plaintiff must establish standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" *Kinman*, 604 F. Supp. 3d at 731 (quoting *Lujan,* 504 U.S. at 561). To establish standing, a plaintiff must have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 136 S. Ct. 1540, 1547, 194 L.Ed.2d 635 (2016). "[A] person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *Rudy*, 583 F. Supp. 2d at 1166 (quoting *TransUnion LLC v. Ramirez*, ⸺ U.S.

11

——, 141 S. Ct. 2190, 2210, 210 L.Ed.2d 568 (2021)). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *Lujan*, 504 U.S. at 564.

Courts in this district consistently hold that plaintiffs bringing deceptive trade practice claims based on past illegal conduct do not have standing to seek injunctive relief because the plaintiff is aware of the allegedly deceptive practices and any potential for future harm is speculative. *See, e.g.*, *Kinman*, 604 F. Supp. 3d at 732; *Rudy*, 583 F. Supp. 2d at 1167; *Chiappetta v. Kellogg Sales Co.*, Case No. 21-CV-3545, 2022 WL 602505 at *8 (N.D. Ill. Mar. 1, 2022). Plaintiff nonetheless argues that Defendant's continued deceptive trade practices make him "unable to rely on the labeling and representations not only of this Product, but other similar high thread count bedding products." (Dkt. 14 at 17). To the extent Plaintiff is relying on the labeling of the same bed sheets in the instant suit, that does not give him standing for the reason articulated above—he is aware of the alleged deception and so any future harm is too speculative to confer standing. And to the extent his standing for injunctive relief is based on the labeling of "similar high thread count bedding products," such claims are not fairly traceable to the challenged conduct of Defendant, as they concern other participants in the bedding industry beside Defendant and products not relevant to this suit. This cannot be the basis for standing for injunctive relief because it fails to satisfy the second element for Article III standing. As such, Plaintiff's claims for injunctive relief are dismissed.

### A Final Note

Federal Rule of Civil Procedure 11(b)(2) states that by presenting a pleading, written motion, or other paper to the Court, an attorney certifies that, to the best of the attorney's knowledge, information, and belief, "the claims, defenses, and other legal contentions are

warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Plaintiff's counsel in this case, Spencer Sheehan, has filed many similar suits bringing virtually identical claims, and has almost universally lost at the motion to dismiss phase for the exact reasons discussed here. Indeed, the Court found the following non-exhaustive list of cases brought by Mr. Sheehan or his firm, Sheehan & Associates, P.C., where a court in this district has dismissed his claims for the same reasons articulated above by the Court:[3]

- Dismissal of Illinois Warranty claims for failure to provide pre-suit notice: *Clark v. Blue Diamond Growers*, No. 22-cv-1591, 2023 WL 4351464, at *7 (N.D. Ill. July 5, 2023); *Agee v. Kroger Co.*, Case No. 22 C 4744, 2023 WL 3004628, at *6-7 (N.D. Ill. Apr. 19, 2023); *Hamidani v. Bimbo Bakehouse, LLC*, Case No. 22-cv-01026, 2023 WL 167513, at *4 (N.D. Ill. Jan. 12, 2023); *Shirley v. Reynolds Consumer Prods, LLC.*, 636 F. Supp. 3d 907, 913 (N.D. Ill. 2022); *Rudy*, 583 F. Supp. 3d at 1162.

- Dismissal of Magnuson Moss Act claims: *Shirley*, 636 F. Supp. 3d at 913-914; *Bartosiake v. Bimbo Bakeries USA, Inc.*, 632 F. Supp. 3d 789, 796-97 (N.D. Ill. 2022); *Rice v. Dreyer's Grand Ice Cream, Inc.*, 624 F.S Supp. 3d 922, 930 (N.D. Ill. 2022); *Jacobs v. Whole Foods Market Group, Inc.*, 621 F. Supp. 3d 894, 899-900 (N.D. Ill. 2022); *Harris v. Kashi Sales, LLC*, 609 F. Supp. 3d 633, 643 (N.D. Ill. 2022).

- Dismissal of negligent misrepresentation claims based on the economic loss rule: *Karlinski v. Costco Wholesale Corp.*, 616 F. Supp. 3d 753, 766-67 (N.D. Ill. 2022); *Harris*, 609 F. Supp. 3d at 644; *Kinman*, 604 F. Supp. 3d at 727-28; *Rudy*, 583 F. Supp. 3d at 1164-65.

- Dismissal of fraud claims due to identical conclusory allegations: *Rudy v. D.F. Stauffer Biscuit Co., Inc.*, No. 21-cv-03938, 2023 WL 2711612, at *10 (N.D. Ill. Mar. 30, 2023); *Cristia v. Trader Joe's Co.*, Case No. 22-cv-1788, at *7 (N.D. Ill. Dec. 9, 2022); *Lederman v. Hershey Co.*, Case No. 21-cv-4528, 2022 WL 3573034, at *6 (N.D. Ill. Aug. 19, 2022); *Kinman*, 604 F. Supp. 3d at 731; *Rudy*, 583 F. Supp. 3d at 1165-66.

- Dismissal of injunctive relief for lack of standing: *Bartosiake*, 632 F. Supp. 3d at 794 n.1; *Rice*, 624 F. Supp. 3d at 926-27; *Kinman*, 604 F. Supp. 3d at 732; *Rudy*, 583 F. Supp. at 1167.

---

[3] The Court cannot stress enough that this list in non-exhaustive. There are literally dozens of cases that could be cited.

In light of the foregoing, the Court harbors serious doubts about whether these claims that counsel repeatedly files over and over again in this district, even though they have been consistently and soundly rejected, without making any effort to amend the allegations to comport with prior court rulings, can reasonably be considered as warranted under existing law by an attorney acting in good faith. At this point, merely parroting these theories and forcing defendants to seek dismissal is a waste of everyone's time as well as a drain on the limited resources of the Court, which are already stretched thin enough by meritorious claims. Counsel is admonished to remember his ethical obligations under Rule 11 and to proceed appropriately in this case and with future filings in this district.

## **CONCLUSION**

For all the foregoing reasons, Defendant's Motion to Dismiss [8] is granted in part and denied in part. Plaintiff's claims for breach of express or implied warranty, violation of the Magnuson Moss Warranty Act and fraudulent misrepresentation, in addition to his request for injunctive relief are dismissed. Plaintiff has stated a claim under the Illinois may proceed on claims under the Illinois Consumer Fraud and Deceptive Business Practices Act, analogous consumer fraud statutes in the identified states, and unjust enrichment. Defendant is ordered to file an answer to the surviving claims in Plaintiff's complaint by November 13, 2023.

Date: October 23, 2023

_____
LaShonda A. Hunt
United States District Judge